## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

**BRANDON STEVENSON #376827**                    **CIVIL ACTION**

**versus**                                                          **NO. 06-1244**

**N. BURL CAIN, WARDEN,**                         **SECTION: "J" (1)**
**LOUISIANA STATE PENITENTIARY**

### REPORT AND RECOMMENDATION

      This matter was referred to this United States Magistrate Judge for the purpose of conducting a hearing, including an evidentiary hearing, if necessary, and submission of proposed findings of fact and recommendations for disposition pursuant to 28 U.S.C. § 636(b)(1)(B) and (C) and, as applicable, Rule 8(b) of the Rules Governing Section 2254 Cases in the United States District Courts.  Upon review of the record, the Court has determined that this matter can be disposed of without an evidentiary hearing.  See 28 U.S.C. § 2254(e)(2).[1]  Therefore, for all of the following reasons, **IT IS RECOMMENDED** that the petition be **DISMISSED WITH PREJUDICE**.

---

[1] Pursuant to 28 U.S.C. § 2254(e)(2), whether to hold an evidentiary hearing is now a statutorily mandated determination.  According to Section 2254(e)(2), the district court generally may hold an evidentiary hearing only when the petitioner has shown that either the claim relies on a new, retroactive rule of constitutional law that was previously unavailable (28 U.S.C. § 2254(e)(2)(A)(i)) or the claim relies on a factual basis that could not have been previously discovered through the exercise of due diligence (28 U.S.C. § 2254(e)(2)(A)(ii)); and the facts underlying the claim show by clear and convincing evidence that, but for the constitutional error, no reasonable jury would have convicted the petitioner (28 U.S.C. § 2254(e)(2)(B)).

Petitioner, Brandon Stevenson, is a state prisoner incarcerated at the Louisiana State Penitentiary, Angola, Louisiana.  On January 23, 2002, he was convicted of armed robbery in violation of La.Rev.Stat.Ann § 14:64.[2]  On March 14, 2002, he was found to be a second offender and was sentenced as such to a term of one hundred ninety-eight years imprisonment without benefit of probation, parole, or suspension of sentence, with credit for time served.[3]  On February 10, 2004, the Louisiana Fifth Circuit Court of Appeal affirmed his conviction and sentence.[4]  He then filed two related writ applications[5] with the Louisiana Supreme Court which were denied on September 24, 2004,[6] and October 1, 2004.[7]

On December 9, 2004, petitioner filed with the state district court a "Motion to Exceed on Application for Post-Conviction."[8]  On December 15, 2004, that application was denied without prejudice because petitioner failed to use the uniform application for post-conviction relief.[9]

---

[2] State Rec., Vol. I of IV, transcript of January 23, 2002, p. 12; State Rec., Vol. I of IV, minute entry dated January 23, 2002; State Rec., Vol. I of IV, jury verdict form.

[3] State Rec., Vol. I of IV, transcript of March 14, 2002, pp. 10-12; State Rec., Vol. I of IV, minute entry dated March 14, 2002.

[4] State v. Stevenson, 868 So.2d 811 (La. App. 5th Cir. 2004) (No. 03-KA-1146); State Rec., Vol. III of IV.

[5] State Rec., Vol. IV of IV.

[6] State v. Stevenson, 882 So.2d 1166 (La. 2004) (No. 2004-KO-0721); State Rec., Vol. IV of IV.

[7] State v. Stevenson, 883 So.2d 1004 (La. 2004) (No. 2004-KO-0863); State Rec., Vol. IV of IV.

[8] State Rec., Vol. III of IV.

[9] State Rec., Vol. III of IV, Order dated December 15, 2004.

On January 6, 2005, petitioner filed with the state district court an application for post-conviction relief on the proper form.[10]  That application was denied on January 11, 2005.[11]  He next filed with the Louisiana Fifth Circuit Court of Appeal an application for a supervisory writ of review which was denied on February 25, 2005.[12]  He then filed with the Louisiana Supreme Court an application for a writ of review[13] which was denied on February 10, 2006.[14]

On February 14, 2006, petitioner filed this federal application for *habeas corpus* relief.[15]  In support of his application, petitioner raised the following claims:

1. Petitioner received ineffective assistance of counsel, to wit:

    (A) Trial counsel was ineffective in the habitual offender proceedings;

    (B) Trial counsel was ineffective in failing to object to hearsay;

    (C) Trial counsel was ineffective in failing to object to comments made by the trial judge;

---

[10]  State Rec., Vol. III of IV.

[11]  State Rec., Vol. III of IV, Order dated January 11, 2005.

[12]  Stevenson v. Cain, No. 05-KH-184 (La. App. 5th Cir. Feb. 25, 2005) (unpublished); State Rec., Vol. IV of IV.

[13]  State Rec., Vol. IV of IV.

[14]  State *ex rel.* Stevenson v. State, 924 So.2d 153 (La. 2006) (No. 2005-KH-1289); State Rec., Vol. IV of IV.

[15]  Rec. Doc. 1.

(D) Trial counsel was ineffective in failing to object to petitioner's identification; and

(E) Appellate counsel was ineffective in failing to raise errors from the trial;

2. The trial judge erred in allowing hearsay evidence at trial in violation of petitioner's rights under the Confrontation Clause;

3. The trial judge erred in allowing the jury to view the victim's head over defense counsel's objection; and

4. There was insufficient evidence to support petitioner's conviction.

The state conceded that petitioner's federal application was timely filed but argued that the application should be dismissed because he failed to exhaust his state court remedies with respect to Claim 1(E) regarding the alleged ineffective assistance of appellate counsel.[16] Petitioner then filed a "traverse"[17] in which he acknowledged that the claim was in fact unexhausted.[18] He

---

[16]   Rec. Doc. 8.

[17]   Rec. Doc. 10.

[18]   This Court independently reviewed the record and reached the same conclusion.  The United States Supreme Court has held:

> Before seeking a federal writ of habeas corpus, a state prisoner must exhaust available state remedies, 28 U.S.C. § 2254(b)(1), thereby giving the State the opportunity to pass upon and correct alleged violations of its prisoners' federal rights.  To provide the State with the necessary opportunity, the prisoner must fairly present his claim in *each* appropriate state court (including a state supreme court with powers of discretionary review), thereby alerting the court to the federal nature of the claim.

Baldwin v. Reese, 541 U.S. 27, 29 (2004) (internal quotation marks and citations omitted) (emphasis added).  Further, the United States Fifth Circuit Court of Appeals has noted:

> A federal court claim must be the "substantial equivalent" of one presented to the state courts if it is to satisfy the "fairly presented" requirement.  The habeas applicant need not spell out each syllable of the claim before the state court to satisfy the exhaustion requirement.  *This requirement is not satisfied if the petitioner presents new legal theories or new factual claims in his federal application.*

Whitehead v. Johnson, 157 F.3d 384, 387 (5th Cir. 1998) (emphasis added).

In his federal application, petitioner alleged that appellate counsel was ineffective in the failing to assign as errors various events at trial, including the ineffective assistance of trial counsel, the admission of hearsay evidence, impermissible comments made by the trial judge, misidentification, insufficient evidence, the admission of perjured testimony, and the admission of involuntary statements.  However, the only allegation petitioner asserted in his state post-conviction application regarding appellate counsel was the following aside included within his discussion of one of his claims that *trial* counsel was ineffective:

> Furthermore, because Appellate Counsel Frank Sloan, after reviewing the multiple bill transcripts of this proceeding did not file an ineffective assistance of counsel claim concerning (Katherine Guste) deficient and prejudicial performance at the multiple hearing that is supported by the record, he also must be considered to be ineffective where it is obvious that the transcript reveals an error which could not be remedied except on appeal.  Therefore, petitioner has been denied the effective assistance of counsel twice, clearly by the record at the multiple bill hearing, but also by counsels inaction on appeal.  There is nothing in the record to support Guste and Sloan's omission that might be considered sound trial, or appellate strategy, or the result of the exercise of such reasonable professional judgment.

State Rec., Vol. III of IV, memorandum in support of state post-conviction application, p. 10.  That passing comment, which was a portion of a single paragraph out of a forty-six page memorandum submitted in support of petitioner's state post-conviction application, clearly cannot be considered a fair presentation of his claim that his appellate counsel was ineffective as that claim was presented in this federal application.  In fact, the state district court did not even interpret the above-quoted passage as a separate claim against appellate counsel.  See State Rec., Vol. III of IV, Order dated

further stated that he "respectfully requestes [sic] the court to separate the unexhausted claim 'subclaim 1(E),' and allow the Petitioner to reserve the claim; (due to it being unexhausted); for future proceedings. Petitioner also ask [sic] that he be allowed to go forth with 'all' exhausted claims and have them revied [sic] by this court."[19]

        This Court then notified petitioner that the piecemeal approach he suggested is not allowed. He was further notified that a federal court will normally entertain only one federal *habeas corpus* petition challenging a conviction, and that if he withdrew his claim that his appellate counsel was ineffective, 28 U.S.C. § 2244 might well preclude him from asserting that claim in a future federal application. Accordingly, petitioner was ordered to notify this Court in writing as to whether, considering the restriction noted above, he still wished to withdraw his claim that his

---

January 11, 2005 (making no mention of a claim that appellate counsel was ineffective).

      Although petitioner's claim mutated as he proceeded through the state appellate process and his claim was more detailed when eventually presented to the Louisiana Supreme Court in his writ application in case number 05-KH-1289, that did not resolve the exhaustion problem. Under Louisiana law, post-conviction claims must be first asserted in the state district court. See La.C.Cr.P. art 926(A). A petitioner who bypasses that requirement and asserts a post-conviction claim in the first instance in the state's appellate courts has not met the federal exhaustion requirement because the claim was not presented to the Louisiana Supreme Court in a procedurally proper manner and, therefore, that court never had a "fair opportunity" to pass upon the claim. Mercadel v. Cain, 179 F.3d 271, 275 (5th Cir. 1999); see also Morace v. Cain, No. 99-30033, 1999 WL 706167 (5th Cir. Aug. 20, 1999); Dupuy v. Butler, 837 F.2d 699, 702 5th Cir. 1988). Because petitioner, at best, presented only a skeletal ineffective assistance of appellate counsel claim to the state district court, the fact that he presented a more detailed, significantly modified claim to the Louisiana Supreme Court was of no moment.

      Likewise, the fact that petitioner arguably presented in his state post-conviction application *a* claim that his appellate counsel was ineffective did not constitute exhaustion of the current ineffective assistance of appellate counsel claim brought on bases not mentioned in the state application. See Ogan v. Cockrell, 297 F.3d 349, 358 (5th Cir. 2002); Burns v. Estelle, 695 F.2d 847, 849-50 (5th Cir. 1983).

    [19]  Rec. Doc. 10, p. 21.

appellate counsel was ineffective.  If petitioner so notified the Court, he would be allowed to amend his federal application to delete his unexhausted claim, and the Court would proceed to review only his exhausted claims.[20]

Petitioner subsequently filed a motion requesting that he be allowed to withdraw his unexhausted claim.[21]  That motion was granted.  Accordingly, this Court will now turn to petitioner's exhausted claims.

<u>Standard of Review</u>

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") comprehensively overhauled federal *habeas corpus* legislation, including 28 U.S.C. § 2254. Amended subsections 2254(d)(1) and (2) contain revised standards of review for questions of fact, questions of law, and mixed questions of law and fact.  Provided that the state court adjudicated the claim on the merits, pure questions of law and mixed questions of law and fact are reviewed under § 2254(d)(1) and questions of fact are reviewed under § 2254(d)(2).  <u>Hill v. Johnson</u>, 210 F.3d 481, 485 (5th Cir. 2000).

As to questions of law and mixed questions of law and fact, a federal court must defer to the state court's decision unless it "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States."  28 U.S.C. § 2254(d)(1).   The United States Supreme Court has noted:

---

[20]  Rec. Doc. 9.  Petitioner was notified that, on the other hand, if he notified the Court that, in light of the foregoing, he did not wish to withdraw his unexhausted claim, the undersigned would recommend that petitioner's federal application be dismissed without prejudice as a mixed petition.

[21]  Rec. Doc. 11.

> § 2254(d)(1)'s "contrary to" and "unreasonable application" clauses have independent meaning. A federal habeas court may issue the writ under the "contrary to" clause if the state court applies a rule different from the governing law set forth in our cases, or if it decides a case differently than we have done on a set of materially indistinguishable facts. The court may grant relief under the "unreasonable application" clause if the state court correctly identifies the governing legal principle from our decisions but unreasonably applies it to the facts of the particular case. The focus of the latter inquiry is on whether the state court's application of clearly established federal law is objectively unreasonable, and we stressed in Williams[ v. Taylor, 529 U.S. 362 (2000)] that an unreasonable application is different from an incorrect one.

Bell v. Cone, 535 U.S. 685, 694 (2002) (citations omitted).

As to questions of fact, factual findings are presumed to be correct and a federal court will give deference to the state court's decision unless it "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2); see also Hill, 210 F.3d at 485; 28 U.S.C. § 2254(e)(1).

<u>Facts</u>

A trial was held in this matter on January 22-23, 2002. At that trial, the following evidence was adduced.[22]

Mequa Pappas testified that she was leaving her convenience store at approximately midnight on December 11, 2000, accompanied by Ja'Raun Wright, Shirley Jackson, and Brian Doty. As Pappas was getting into her truck, two men dressed in black charged at her with guns drawn and their shirts over their faces. One of the men demanded her purse, a black Polo Sport bag. She at first thought it was a joke, but the man said, "Bitch, I'm not playing. Give me your purse. Give me

---

[22] The trial transcripts are included in Volume I of the state court record.

your purse." The man then hit her on the head with the gun and pulled the purse off of her shoulder. When he grabbed the purse, his shirt fell, allowing Pappas to see his face. The men fled, with Doty and Wright giving chase until the robbers started shooting. Pappas testified that her purse contained $1,300 in cash from her store and various personal possessions.

Over the following month, various people, including a woman named "Michelle," gave Pappas information about the robbery. Pappas contacted the police and gave them those leads.

Pappas was later shown a photographic lineup by a police officer. She told the officer that petitioner's photograph looked familiar, but she was unable to make a positive identification. At trial, she said she was "95 percent" sure that petitioner was the man who robbed her.

The state's second witness was Renata Stevenson, petitioner's cousin. While in her apartment around midnight on December 11, 2000, she heard gunshots. Shortly thereafter, her boyfriend and his friend ran inside, followed closely by petitioner and another man. Petitioner had a black handbag. The men looked through the handbag, and she saw that it contained cash. As the men were talking, petitioner said that the woman refused to give up the bag when they first approached her. At first, Renata Stevenson did not tell the police of the incident; however, she later revealed what she knew when the police told her that someone saw the robbers run into her apartment.

The next witness was Shirley Jackson, who described the robbery in a manner consistent with Pappas' testimony. Jackson additionally stated that she saw the side of the robber's face when his shirt fell after he hit Pappas with the gun.

The state's next witness was Angelic LeBlanc.  She testified that she was outside her house at approximately midnight on December 11, 2000, when she heard gunshots.  She then saw two men dressed in black run by, one of whom dropped a gun.  She recognized petitioner, who was already an acquaintance, as one of the men.  He had in his hand a black Polo Sport bag that she recognized as belonging to Pappas.  She heard petitioner say, "We scoped it out two days for this?"  She testified that she picked out petitioner's picture from a photographic lineup.  She stated that she was absolutely sure that petitioner was the man she saw.  On cross-examination, LeBlanc stated that she was pressured to testify by police and that her boyfriend was at one time implicated in the robbery.

Deputy William Jones testified about the course of the investigation, his questioning of the witnesses, the photographic lineup, and petitioner's identification.

Shirley Jackson and Mequa Pappas were briefly recalled to the stand.  Pappas was again questioned about being struck by petitioner with the gun, and her injury was shown to the jury.

After the state rested its case, the defense recalled Angelic LeBlanc, who essentially reiterated her prior testimony.

<u>Ineffective Assistance of Counsel</u>

Petitioner's first claim is that his trial counsel was ineffective.  In <u>Strickland v. Washington</u>, 466 U.S. 668 (1984), the United States Supreme Court established a two-prong test for evaluating claims of ineffective assistance of counsel.  A petitioner seeking relief must demonstrate that counsel's performance was deficient *and* that the deficient performance prejudiced his defense.  <u>See</u> <u>id</u>. at 697.  If a court finds that petitioner has made an insufficient showing as to either of the

two prongs of inquiry, i.e. deficient performance or actual prejudice, it may dispose of the claim without addressing the other prong.  Id.

To prevail on the deficiency prong, petitioner must demonstrate that counsel's conduct fails to meet the constitutional minimum guaranteed by the Sixth Amendment.  See Styron v. Johnson, 262 F.3d 438, 450 (5th Cir. 2001).  "Counsel's performance is deficient if it falls below an objective standard of reasonableness."  Little v. Johnson, 162 F.3d 855, 860 (5th Cir. 1998). Analysis of counsel's performance must take into account the reasonableness of counsel's actions in light of all the circumstances.  See Strickland, 466 U.S. at 689. "[I]t is necessary to 'judge ... counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct.'"  Lockhart v. Fretwell, 506 U.S. 364, 371 (1993) (quoting Strickland, 466 U.S. at 690). Petitioner must overcome a strong presumption that the conduct of his counsel falls within a wide range of reasonable representation.  See Crockett v. McCotter, 796 F.2d 787, 791 (5th Cir. 1986); Mattheson v. King, 751 F.2d 1432, 1441 (5th Cir. 1985).

In order to prove prejudice with respect to trial counsel, petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  Strickland, 466 U.S. at 694.  In this context, a reasonable probability is "a probability sufficient to undermine confidence in the outcome."  Id.  In making a determination as to whether prejudice occurred, courts must review the record to determine "the relative role that the alleged trial errors played in the total context of [the] trial."  Crockett, 796 F.2d at 793.

A claim of ineffective assistance of counsel is a mixed question of law and fact.

Moore v. Cockrell, 313 F.3d 880, 881 (5th Cir. 2002).  Therefore, this Court must defer to the state

court on such claims unless the state court's decision "was contrary to, or involved an unreasonable

application of, clearly established Federal law, as determined by the Supreme Court of the United

States."  28 U.S.C. § 2254(d)(1).

Petitioner contends that trial counsel was ineffective in failing to object to the

habitual offender proceedings, to hearsay, to comments made by the trial judge, and to petitioner's

identification.  In the last reasoned state court judgment addressing this claim, the state district court

rejected the claim, holding:

> In his first assignment of error, defendant alleges that counsel was
> ineffective due to his failure to object to the multiple bill, comments
> made by the Judge, hearsay testimony, and to the identification.  The
> Supreme Court of the United States established the standards for the
> claim of ineffective assistance of counsel in Strickland v.
> Washington, 466 U.S. 668 (1984).  The test established by the
> Supreme Court provides that in order for a claim of ineffective
> assistance of counsel to prevail, the petitioner must show the counsel
> made errors so serious that counsel was not functioning as the
> counsel guaranteed by the Sixth Amendment and that the deficient
> performance prejudiced the defense in that the errors were so serious
> as to deprive petitioner of a fair trial.
>
> The Louisiana Supreme Court addressed this very issue in
> State v. Strahan, 325 So.2d 231 (La. 1975).
>
>> "Further, failure of trial counsel to adequately
>> question alibi witnesses, properly investigate the case,
>> make an opening statement, have the defendant take
>> the stand, request particular special charges, and
>> object to certain questions asked of witnesses at trial
>> are all claimed to clearly show that defendant was not
>> adequately and effectively represented at the trial.
>> We do not agree.  These charges are either leveled at
>> decisions made by counsel during the heat of trial, the

correctness of which cannot be determined by hindsight, or the validity of which is not evident from the record." Id. at 233.

In the instant case, none of the defendant's claims seem to go beyond strategic choices made by counsel at the time of the defendant's trial. The defendant's claims are essentially with his counsel's decisions regarding objections raised at trial. These are considered trial tactics for purposes of evaluating the performance of defendant's counsel. Thus, defendant's claim must fail because his counsel's action at trial was considered trial tactics and under the Strickland test, the defendant has failed to meet the two-prong test.[23]

Petitioner's first contention with respect to this claim is that counsel was ineffective in connection with the habitual offender proceedings. After petitioner's conviction on the instant offense, the state instituted habitual offender proceedings against him. For reasons that are not entirely clear, the state apparently filed two separate multiple bills on information in this case. The first multiple bill of information alleged that on May 27, 1998, petitioner pled guilty to a drug offense in case number 98-1394, and that on April 7, 1997, he pled guilty to a drug offense in case number 96-7521.[24] A second multiple bill of information was also filed, alleging that on December 10, 1996, petitioner pled guilty to simple burglary of an inhabited dwelling in case number 96-6048 and again alleging that on May 27, 1998, he pled guilty to a drug offense in case number 98-1394.[25]

---

[23] State Rec., Vol. III of IV, Order dated January 11, 2005, p. 1. The Louisiana Fifth Circuit Court of Appeal found "no error" in that ruling. Stevenson v. Cain, No. 05-KH-184 (La. App. 5th Cir. Feb. 25, 2005) (unpublished); State Rec., Vol. IV of IV. The Louisiana Supreme Court denied the related writ application without assigning reasons. State ex rel. Stevenson v. State, 924 So.2d 153 (La. 2006) (No. 2005-KH-1289); State Rec., Vol. IV of IV.

[24] State Rec., Vol. I of IV.

[25] State Rec., Vol. I of IV.

Defense counsel did not file a written response challenging those prior convictions.   See La.Rev.Stat.Ann. § 15:529.1(D)(1)(b) ("If the person claims that any conviction or adjudication of delinquency alleged is invalid, he shall file a written response to the information.").   At the habitual offender proceeding in this matter, the state introduced records relating to the prior prosecutions which were linked to petitioner through the testimony of a fingerprint expert.   The trial judge then found petitioner to be a second offender but did not expressly state on which of the prior convictions he was basing the habitual offender adjudication.

Petitioner contends that defense counsel should have challenged the constitutional validity of the predicate convictions and the sufficiency of the evidence presented by the state at the habitual offender hearing, should have introduced evidence for the defense and cross-examined the fingerprint expert, and should have challenged the judge's failure to specify which of the predicate convictions he was using to enhance petitioner's sentence.

This Court notes that the habitual offender proceedings were arguably problematic. It is not clear from the record before this Court exactly what evidence was presented at the habitual offender adjudication.   The record reflects, however, that, after discussions in bench conferences held off the record, the trial judge sentenced petitioner as only a second offender despite a belief that he was in fact a fourth offender:

> THE COURT:
> May I see the exhibits and the Bill, itself, and y'all approach the bench, please.
>
> (Bench conference)
>
> THE COURT:

All right.  Mr. Stevenson, in this case the state has filed a habitual offender charge against you alleging you to be a third multiple offender, and the Court is going to find that you are not a third multiple offender, but you are a second multiple offender.

The Court will take into consideration that in reality you have at least three convictions, two for drugs and one for burglary.

Any other convictions besides those?

MR. BELANGER [the prosecutor]:
    I believe he does.

THE COURT:
    What would that be for?

MR. BELANGER:
    Judge, I have a total of three prior convictions, two for distribution in April of '97, May of '98, and a simple burglary in December of '96.

MS. GUSTE [defense counsel]:
    Can we approach, Judge?

THE COURT:
    Yes.

(Bench conference)

THE COURT:
    All right.  We are all on the same page now.

So, what we have, though, Mr. Stevenson, is that you did – you fooled with drugs, apparently it's a possession with intent to distribute, twice.  You did a burglary and then you come back and do an armed robbery.  You're getting worse, not better.

In Louisiana, the legislature came out and said that we have "a three strikes you're out rule," and you're at strike number four.

What I'm going to do is sentence you to 198 years in the Department of Corrections as a second offender without benefit of probation, parole or suspension of sentence and give you credit for time you have served.[26]

---

[26]  State Rec., Vol. I of IV, transcript of March 14, 2002, pp. 10-12.

Nevertheless, despite the fact that this Court cannot ascertain with certainty what transpired at the habitual offender proceedings and whether, for example, petitioner was adjudicated as only a second offender based on some deal struck off the record, that is of no real moment with respect to the instant claim.  The instant claim is not a direct attack on the habitual offender adjudication; rather, it is an *ineffective assistance of counsel claim*.  In the context of such a claim, petitioner must show deficient performance and prejudice.  While the record makes it difficult to discern whether defense counsel performed deficiently, the Court need not reach that issue because petitioner has not met his burden in this proceeding to establish prejudice.  He has produced no evidence that his prior convictions were in fact constitutionally invalid or that the state could not have proved their constitutional validity if required to do so in the habitual offender proceeding.  Moreover, he has not demonstrated that any of the predicate convictions, much less all of them, do not in fact relate to him.  Because he has failed to establish that he was not in fact a second offender, he has failed to show any prejudice resulting from his adjudication as such.

Petitioner next contends that defense counsel was ineffective in failing to object to hearsay which violated his rights under the Confrontation Clause.  With respect to this contention, petitioner first points to the victim's testimony regarding a conversation she had with a person named "Michelle."  The only reference to "Michelle" during the state's direct examination of the victim occurred in connection with her testimony explaining how, approximately a month after the robbery, she became aware of a lead in the case that she then passed on to police.  That brief exchange was as follows:

> Q.    Did you have occasion approximately a month later, maybe longer, to speak with someone named "Michelle"?

> A.     Yes.  Um, they had various people come in the store telling me different things.  But, when Michelle came in, it stood out because she told me exactly what they had on, you know, where they jumped the fence at.  It was like everybody's story just came together in her one story.
>
> Q.     And, once you spoke with Michelle, what action did you take based on that conversation?
>
> A.     I called the, um, investigator, the card that they gave me, and I told them that I had some information when – that led up to the crime.[27]

On cross-examination, defense counsel revisited the issue and elicited the following testimony from the victim:

> A.     ... [Michelle] said, "I wanted to tell you that night I seen two guys jump the fence, run by the washateria, and run up into" this certain apartment, described what they had on, described who was around, and told me everything, which those – that story led into every other story I've heard.[28]

The victim further testified that Michelle was not able to identify either of the robbers.[29]

Petitioner next points to Renata Stevenson's testimony, in which she revealed that she had discussed the robbery with other unidentified persons.  The implication of that testimony was that she thought the victim had been hit with the gun based on what others had told her.[30]

---

[27]  State Rec., Vol. I of IV, transcript of January 22, 2002, pp. 10-11.

[28]  State Rec., Vol. I of IV, transcript of January 22, 2002, p. 15.

[29]  State Rec., Vol. I of IV, transcript of January 22, 2002, p. 16.

[30]  State Rec., Vol. I of IV, transcript of January 22, 2002, pp. 33-34.

A court need not engage in a laborious discussion of whether testimony in fact constituted hearsay and, if so, whether counsel performed deficiently in failing to object to it where, as here, it is clear that no prejudice resulted from admission of the testimony.  See, e.g., Stokes v. Procunier, 744 F.2d 475, 482 (5th Cir. 1984).  In the instant case, the evidence of petitioner's guilt was overwhelming; moreover, the comments at issue were of minimal import and were cumulative of the other testimony at trial.  Whether "Michelle" in fact saw the robbers enter Renata Stevenson's apartment is of no consequence; Renata Stevenson herself testified at trial that they did.  Whether others told Renata Stevenson that the victim was hit with the gun is likewise unimportant; both the victim and Shirley Jackson testified to that fact at trial.  Accordingly, even if even counsel had objected to the alleged hearsay and that objection had been sustained, there no reasonable probability that the result of this proceeding would have been different.  Accordingly, petitioner's claim necessarily fails.

Petitioner's third contention with respect to this claim is that his counsel was ineffective in failing to object to a comment made during the trial by the judge.  Petitioner's claim arises from a comment made by the judge during defense counsel's direct examination of Angelic LeBlanc.  As LeBlanc was being questioned about her identification of petitioner and how he was dressed, the prosecutor objected:

> MR. FREESE:
>     Your Honor, objection.   This is cumulative of earlier testimony – earlier cross-examination of this witness yesterday, and it's purely repetitive.
>
> THE COURT:
>     Counsel, he's correct.  You're going to go somewhere new?

MS. GUSTE:

    Yes, Your Honor.  My client's given me a list of things he would like –

THE COURT:

    All right.

MS. GUSTE:

    – this – well, he's got a right to his defense, Your Honor, and I –

THE COURT:

    My daddy always told me, "When you're winning, don't argue."  You're winning, so go ahead and do it.

MS. GUSTE:

    Can I have a moment, Your Honor?

THE COURT:

    I can wait.

MR. FREESE:

    Can we approach, Your Honor.

THE COURT:

    M'mm - h'mm (affirmative expression)

* * * * * * *

(Bench conference outside of the hearing of the Jury, as follows:)

THE COURT:

    What you got?

MR. FREESE:

    Your Honor, I fear the jury my [sic] think that the last comment you made was an opinion about the case and not the arguments –

THE COURT:

    I understand, yeah.  It could be mistaken that way.  I'll explain it to them.

MR. FREESE:
Thank you.

THE COURT:
All right.

(End of Bench conference)

\* \* \* \* \* \* \*

THE COURT:
Yeah, Counsel's correct.  When I made the statement, you know, "Don't argue when you're winning," I certainly hope y'all didn't take that to think I had an opinion about the trial.  Okay?  What I mean was "You're winning that particular argument; I'm going to allow you to ask those particular questions."
Does everybody understand that?

(Jurors nod their heads affirmatively.)

THE COURT:
Okay.  Because remember when I told you in the arguments I'm not allowed to have any opinion of the case, itself.  Good.
Thanking you for pointing that out to me, Mr. D.A.[31]

To the extent that petitioner is contending that counsel should have objected to the original comment, his claim has no merit for several reasons.  First, the judge's comment was not in fact objectionable.  It was clear from the context that the judge was not commenting on which side was winning the trial; rather, he obviously meant only that defense counsel was correct in arguing that her questions should be allowed because the petitioner was entitled to present his defense.  Second, there *was* an objection made to the comment, albeit by the prosecutor; therefore, any additional objection by defense counsel was unnecessary.  Third, even if the judge's comment was

---

[31]  State Rec., Vol. I of IV, transcript of January 23, 2002, pp. 5-7.

subject to being misinterpreted as a comment as to which side was winning the trial, the only possible interpretation would be that the *defense* was prevailing. Therefore, any benefit from such a misinterpretation would have inured to the benefit of the defense, and so defense counsel would have had no cause to object. Lastly, in any event, the prosecutor's objection was sustained, the judge explained his comment, and the jurors indicated that they understood the explanation.

It appears, however, that petitioner is actually contending that defense counsel should have objected to the explanation offered by the trial judge. To the extent that is his claim, it is also clearly without merit. The judge explained that his comment was merely an acknowledgment that defense counsel was correct in arguing that her questions were proper and that the prosecutor's objection to the questions as cumulative and repetitive should be overruled. A criminal defendant's rights are not violated by a judge's acknowledgment that defense counsel has made a valid point regarding a prosecutor's objection.

Petitioner's fourth contention is that counsel should have challenged the pretrial identification procedures and his in-court identification. As noted previously, Mequa Pappas and Angelic LeBlanc were shown a pretrial photographic lineup. Pappas noted that petitioner's picture looked familiar but she was unable to positively identify him. LeBlanc, who was already an acquaintance of petitioner, identified his photograph in the lineup. In this claim, petitioner contends that defense counsel should have challenged that lineup as impermissibly suggestive.

The United States Fifth Circuit Court of Appeals has noted:

In Simmons v. United States, 390 U.S. 377, 88 S.Ct. 967, 19 L.Ed.2d 1247 (1968), the Supreme Court announced the now familiar rule that a conviction based on an eyewitness identification at trial following a pretrial identification by photograph will be set aside

only if the identification procedure was so impermissibly suggestive as to give rise to a substantial likelihood of misidentification. As this Court has acknowledged, the admissibility of identification evidence is governed by a two-step analysis. Initially, a determination must be made as to whether the identification procedure was impermissibly suggestive. Next, the court must determine whether, under the totality of the circumstances, the suggestiveness leads to a substantial likelihood of irreparable misidentification.

Herrera v. Collins, 904 F.2d 944, 946 (5th Cir. 1990) (footnote omitted). A court need not address the second step if the first step is not met: "If the identification procedure is not impermissibly suggestive, the inquiry ends." Livingston v. Johnson, 107 F.3d 297, 309 (5th Cir. 1997).[32]

As an initial matter, this Court notes that petitioner's claim is factually inaccurate. Defense counsel *did* challenge the photographic lineup by filing a pretrial motion to suppress the

---

[32] However, if a determination must be made regarding the second step, the Fifth Circuit has offered the following guidance:

In Manson v. Brathwaite, 432 U.S. 98, 97 S.Ct. 2243, 53 L.Ed.2d 140 (1977), the Supreme Court indicated that "reliability is the linchpin" when examining the totality of the circumstances to "determin[e] the admissibility of identification testimony." Id. at 114, 97 S.Ct. at 2253. Even an impermissibly suggestive identification procedure does not violate due process so long as the identification possesses sufficient aspects of reliability. The Supreme Court has set forth several factors to be considered when reviewing the reliability of a pre-trial identification. These factors include

(1) the opportunity of the witness to view the criminal, (2) the witness's degree of attention, (3) the accuracy of the description, (4) the witness's level of certainty, (5) the elapsed time between the crime and the identification, and (6) the corrupting influence of the suggestive identification itself.

Herrera, 904 F.2d at 947.

lineup.[33]  A hearing was held on that motion on May 29, 2001, at which time the circumstances of

the lineup were examined in depth.[34]  At that hearing, Detective William Jones testified as follows:

EXAMINATION BY MR. BELANGER [the prosecutor]:

Q.    Do you recognize what that – what is that, that you have in your hands now?

A.    It's lineup that I compiled of Brandon Stevenson.

Q.    How many pictures are in that lineup?

A.    Six.

Q.    How did you come by those pictures?

A.    Obtained the black-and-whites from the AFIS Database.

Q.    Why are they black and white as opposed to color?

A.    The actual machine was down that day, and we were having a lot of problems with it, so we obtained five additional photographs of black males with similar characteristics as Mr. Stevenson.

Q.    And how did you acquire a photograph of Mr. Stevenson?

A.    From the AFIS machine.

Q.    So all six photos were acquired from AFIS?

A.    They were all acquired from the same place; but, due to the machine having problems and with the computer, we were unable to actually compile a normal lineup.

_____

[33]  State Rec., Vol. I of IV.

[34]  A full transcript of that hearing is contained in Volume I of the State Court Record.

Q.      The six photos that were selected, the machine selected those
        photos?

A.      The machine gives you options, and then I actually – it's my
        decision of what photographs are – we obtained.

Q.      And how does the machine give you options?

A.      We punch in certain criteria – height, weight, hair color, eye
        color, skin tone – and it will bring up subjects who are also
        logged with that same type.

THE COURT:
        Let me ask you:  This machine will now do, computerwise,
what we used to have to do just by hand –

THE WITNESS:
        Yes, sir.

THE COURT:
        – looking through it?  So you tell them, "I want," you know,
"black males, medium build, medium complexion, short hair," and
you tell it all this –

THE WITNESS:
        Yes, Your Honor.

THE COURT:
        – and you pop up all of them?  Interesting.
        Go ahead.

EXAMINATION BY MR. BELANGER:

Q.      And the criteria you put into the computer, were those the
        same – did those criteria match the description of the
        defendant?

A.      Yes, sir.

Q.      Do you recall what those criteria were that you put into the
        computer?

- 24 -

A.      It would have been directly taken – taken off directly of his original photograph sheet.  And I don't remember what those exact dimensions are.

Q.      And, when you obtained these five additional – how did you obtain these five additional photos?  Was there any further procedure done once AFIS provided you with some photos?

A.      We obtained – we – actually, we had copied down numbers that corresponded with the photographs, and then we would at least get the black-and-white pictures of the photographs.

Q.      And how many photos did AFIS produce for you, if you can recall?

A.      I do not recall.

Q.      And how did you get down to the final five again?

A.      I took the five pictures that I felt were best for the lineup.

Q.      And did you, in fact, show these to Miss LeBlanc?

A.      Yes, I did.

Q.      Any particular order?

A.      The order that they're currently lined up in.  What I did was – is on my desk, and I put them one, two, three, for, five six (Witness gesturing) – all six pictures out in front of her.

Q.      Were any of the photos unduly suggested?

A.      No.

Q.      Were they all black-and-whites?

A.      Yes.

Q.      They're all of black males?

A.      Yes.

- 25 -

Q.      All of the males of approximately the same height and build
and skin color and hair length as the defendant?

A.      Yes.

Q.      Do you do anything to indicate which photo was the
defendant?

A.      No.

Q.      Did Miss LeBlanc identify the defendant from those photos?

A.      Yes.

Q.      Which photo was that?

A.      #5.[35]

At the conclusion of the hearing, the trial judge ruled:

All right.  Taking up the motion for the photograph lineup, the
Court is going to state that the Court is satisfied that the procedure
used by the detective was constitutionally sound.  And the Court –
this is the first case in this Court where they used the AFIS machine
to get the fill-ins.
        The Court is going to be, I guess, from the old school.  The
police officers had to keep their own file and their own photographs
and go through and find them by hand or go over to the B. of I. room
and try to get some from there that were done by hand.
        And I've never seen a stack as good as this stack was in its
features that were remarkably similar to the defendant.  I mean I
looked to find differences.  All the hair lengths are about the same,
they all have on the same type of shirt.   The similarities are
remarkable.

---

[35]  State Rec., Vol. I of IV, transcript of May 29, 2001, pp. 8-11.

> I think that this was certainly constitutionally sound as far as it goes, so I'm going to deny your motion to suppress the identification.[36]

Based on the foregoing, petitioner's claim that his counsel was ineffective in failing to challenge the lineup as suggestive is wholly without merit. In the first place, counsel did challenge the lineup. Second, all of the evidence at the pretrial hearing and at the trial reflects that the procedure employed in the lineup was in no way suggestive, and petitioner has provided no evidence whatsoever to the contrary. Third, of the two witnesses shown the lineup, Pappas could not positively identify petitioner and LeBlanc *already knew him* as an acquaintance. Based on the foregoing facts and the law, petitioner has not shown that counsel performed deficiently or that he was prejudiced with respect to the lineup.

Petitioner also seems to argue that counsel should have challenged all of the witnesses' in-court identification of petitioner as unreliable. However, there was no basis for excluding the in-court identifications; rather, counsel could only cross-examine the witnesses to try to shake their degree of certainty and to otherwise poke holes in their testimony. The transcript reflects that counsel did just that. It was then up to the jurors to determine whether the witnesses were credible and whether their identifications were reliable. The fact that the jurors found that they were credible is not evidence that counsel was in any way ineffective. Petitioner simply has not shown that counsel performed deficiently in this respect or that prejudice resulted.

In the instant case, the state court correctly identified the appropriate legal standard, i.e. the <u>Strickland</u> standard, in analyzing petitioner's ineffective assistance of counsel claim.

---

[36] State Rec., Vol. I of IV, transcript of May 29, 2001, p. 34.

Moreover, petitioner has failed to demonstrate that the state court's decision on his ineffective assistance of counsel claim was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States.  Applying the AEDPA's deferential standard, this Court therefore rejects that claim.

Confrontation Clause

Petitioner next claims that the trial judge erred in allowing testimonial evidence at trial in violation of petitioner's rights under the Confrontation Clause.  The state argues that this claim is procedurally barred.

Regarding procedural bars, the United States Fifth Circuit Court of Appeals has held:

> A claim that a state has withheld a federal right from a person in its custody may not be reviewed by a federal court if the last state court to consider that claim expressly relied on a state ground for denial of relief that is both independent of the merits of the federal claim and an adequate basis for the court's decision.  To satisfy the "independent" and "adequate" requirements, the dismissal must "clearly and expressly" indicate that it rests on state grounds which bar relief, and the bar must be strictly or regularly followed by state courts, and applied to the majority of similar claims.  This rule applies to state court judgments on both substantive and procedural grounds.  Where there has been one reasoned state judgment rejecting a federal claim, later unexplained orders upholding that judgment or rejecting the same claim are presumed to rest upon the same ground.

Finley v. Johnson, 243 F.3d 215, 218 (5th Cir. 2001) (citations omitted).  "When the state court has relied on an independent and adequate state procedural rule, federal habeas review is barred unless the petitioner demonstrates either cause and prejudice or that a failure to address the claim will result in a fundamental miscarriage of justice."  Hughes v. Johnson, 191 F.3d 607, 614 (5th Cir. 1999).

It is clear that the instant claim was rejected by the state courts based on a procedural default.  In the last reasoned state court judgment addressing the claim, the state district court held:

> In his third assignment of error, defendant alleges that the Court erred in allowing testimony in violation of his 6th Amendment rights.  The Court in <u>Talley v. Maggio</u>, 451 So.2d 1358 (La. App. 4th Cir. 6/29/84), addressed this very issue.  The court found that defendants [sic] argument lacked merit because there was no contemporaneous objection to the testimony.  Additionally, the court found the inconsistency of the witnesses [sic] testimony was not assigned as error in defendant's appeal.  Thus, the Court held that the objection was waived pursuant to La.C.Cr.P. Art. 841 and 920.  Moreover, the Court held that even if these objections were not waived, the defendant's argument assails the credibility of the witnesses' testimony which is an issue resolved by the jury at trial.  Thus, the Court ruled that the claim had no merit.  Based on the foregoing reasons, this claim must be denied.[37]

The procedural rule invoked, i.e. Louisiana's contemporaneous objection rule, is clearly an independent and adequate state procedural rule.  <u>Duncan v. Cain</u>, 278 F.3d 537, 541-43 (5th Cir. 2002).  Therefore, this Court need only determine whether petitioner has demonstrated "cause and prejudice" or that the failure to address the claim would result in a "fundamental miscarriage of justice."  <u>Hughes</u>, 191 F.3d at 614.  In the instant case, petitioner demonstrates neither.

"To establish cause for a procedural default, there must be something *external* to the petitioner, something that cannot fairly be attributed to him."  <u>Johnson v. Puckett</u>, 176 F.3d 809, 816

---

[37]  State Rec., Vol. III of IV, Order dated January 11, 2005, p. 2.  The Louisiana Fifth Circuit Court of Appeal found "no error" in that ruling.  <u>Stevenson v. Cain</u>, No. 05-KH-184 (La. App. 5th Cir. Feb. 25, 2005) (unpublished); State Rec., Vol. IV of IV.  The Louisiana Supreme Court denied the related writ application without assigning reasons.  <u>State <i>ex rel.</i> Stevenson v. State</u>, 924 So.2d 153 (La. 2006) (No. 2005-KH-1289); State Rec., Vol. IV of IV.

(5th Cir. 1999) (quotation marks omitted) (emphasis in original).  As noted, petitioner claims that his counsel was ineffective in failing to object to the alleged hearsay testimony.  In some instances, ineffective assistance of counsel can constitute cause for a procedural default.  See Romero v. Collins, 961 F.2d 1181, 1183 (5th Cir. 1992).  However, as previously noted in this opinion, counsel was not in fact ineffective in this respect.  Because of that fact, and because petitioner has not otherwise shown cause, he has failed to meet his burden to establish cause and, therefore, "it is not necessary for the court to consider whether there is actual prejudice."  Martin v. Maxey, 98 F.3d 844, 849 (5th Cir. 1996).

In light of the foregoing, petitioner's claim is procedurally barred unless the application of the bar will result in a fundamental miscarriage of justice.  In order to establish a "fundamental miscarriage of justice," a petitioner must "make a persuasive showing that he is actually innocent of the charges against him.  Essentially, the petitioner must show that, as a factual matter, he did not commit the crime for which he was convicted."  Finley v. Johnson, 243 F.3d 215, 220 (5th Cir. 2001) (citations omitted). The United States Fifth Circuit Court of Appeals has held:

> To demonstrate actual innocence, it is necessary that the petitioner show that it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt ... in light of all of the evidence, including that alleged to have been illegally admitted (but with due regard to any unreliability of it) and evidence tenably claimed to have been wrongfully excluded or to have become available only after trial.

Lucas v. Johnson, 132 F.3d 1069, 1077 (5th Cir. 1998) (quotation marks and citations omitted).  Applying that standard, and considering the overwhelming evidence of petitioner's guilt in this case, the Court finds that petitioner has not made a persuasive showing that he is actually innocent of the

charge against him.  Therefore, he cannot demonstrate that any miscarriage of justice will result from application of the procedural bar.  Accordingly, the state is correct in arguing that petitioner's claim is procedurally barred in this federal proceeding.

Evidentiary Ruling/Sufficiency of the Evidence

Petitioner's final two claims are that the trial judge erred in allowing the jury to view the victim's head over defense counsel's objection and that there was insufficient evidence to support his conviction.  The state likewise argues that these claims are procedurally barred.  Again, the state is correct.

It is clear that these claims were also rejected by the state courts based on a procedural default.  In the last reasoned state court judgment addressing the claims, the state district court held:

> In his second assignment of error, defendant alleges that the Court erred when it allowed the jury to view the victim's head.  The defendant's claim is an appealable issues [sic] and he is, thus, procedurally barred from raising this claim on post-conviction relief since he had the opportunity to do so on appeal.  State v. Gaines, 97-1327 (La. App. 4 Cir. 9/19/97), 701 So.2d 688.  Furthermore, the Louisiana Fifth Circuit Court of Appeal affirmed the defendant's conviction and sentence in State v. Stevenson, 03-KA-1146, (La. App. 5 Cir. 2/10/04).  Therefore, defendant's claim based on inadmissible evidence must fail.
>
> ....
>
> In his fourth assignment of error, defendant claims insufficient evidence was used to convict him.  This claim is also an appealable issues [sic] and he is, thus, procedurally barred from raising the claim on post-conviction relief since he had the opportunity to do so on appeal.  State v. Gaines, 97-1327 (La. App.

4 Cir. 9/1997), 701 So.2d 688.   Therefore, defendant's claim of insufficient evidence must fail.[38]

The procedural rule invoked, i.e. that a post-conviction claim is waived if not asserted on direct appeal, is obviously independent of the merits of the federal claim.   Therefore, the Court needs only to determine whether that rule was "adequate."   "The [procedural bar] doctrine presumes that a state procedural ground is adequate ... and, ordinarily, the burden is on the habeas petitioner to demonstrate otherwise."   Hughes, 191 F.3d at 614.   In order to establish that a state procedural rule is not "adequate," a petitioner bears the burden of showing that the state did not strictly or regularly follow the procedural rule.   Stokes v. Anderson, 123 F.3d 858, 860 (5th Cir. 1997).   Here, petitioner clearly has not met his burden, in that he makes no attempt whatsoever to establish that the contemporaneous objection rule was not strictly or regularly followed.[39]

With respect to a showing of "cause" for the default, petitioner alleges only that his appellate counsel was ineffective in failing to raise these claims.   However, because petitioner did not argue in his state post-conviction application that his appellate counsel was ineffective in that regard, and because he would now be barred from so arguing, see La.C.Crim.P. arts. 930.4(E), any such ineffective assistance of counsel claim would itself be procedurally defaulted.   A procedurally

---

[38]   State Rec., Vol. III of IV, Order dated January 11, 2005, pp. 1-2.   The Louisiana Fifth Circuit Court of Appeal found "no error" in that ruling.   Stevenson v. Cain, No. 05-KH-184 (La. App. 5th Cir. Feb. 25, 2005) (unpublished); State Rec., Vol. IV of IV.   The Louisiana Supreme Court denied the related writ application without assigning reasons.   State ex rel. Stevenson v. State, 924 So.2d 153 (La. 2006) (No. 2005-KH-1289); State Rec., Vol. IV of IV.

[39]   Moreover, it is clear that the procedural rule in question is an independent and adequate state court ground.   See Bell v. Cain, Civil Action No. 02-0259, 2002 WL 31002831, at *4 (E.D. La. Aug. 29, 2002) (Africk, J.); see also Gilkers v. Cain, Civil Action No. 05-841, 2006 WL 1985969, at *2 (E.D. La. May 30, 2006) (Duval, J.).

defaulted ineffective assistance of counsel claim may not serve as "cause" for a procedurally barred claim unless plaintiff shows "cause and prejudice" for the defaulted ineffective assistance of counsel claim.  See Edwards v. Carpenter, 529 U.S. 446 (2000).  Petitioner makes no attempt whatsoever to make that showing.  Because petitioner has again failed to meet his burden to establish cause, it is unnecessary for the Court to consider whether prejudice resulted.  Martin v. Maxey, 98 F.3d 844, 849 (5th Cir. 1996).

Lastly, as the Court has already determined that, in light of the overwhelming evidence of petitioner's guilt in this case, petitioner has not made a persuasive showing that he is actually innocent of the charge against him.  Therefore, he cannot demonstrate that any miscarriage of justice will result from application of the procedural bar to these claims.  Accordingly, the state is correct in arguing that petitioner's claims are procedurally barred in this federal proceeding.

## **RECOMMENDATION**

Accordingly, **IT IS RECOMMENDED** that the petition for federal *habeas corpus* relief filed by Brandon Stevenson be **DISMISSED WITH PREJUDICE**.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation contained in a magistrate judge's report and recommendation within 10 days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object.  Douglass v. United Services Auto. Ass'n, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc).

New Orleans, Louisiana, this tenth day of August, 2006.

**SALLY SHUSHAN**
**UNITED STATES MAGISTRATE JUDGE**